Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. I don't see any of our counsel here yet, but I suppose they will be on the screen shortly. First of all, we want to welcome and thank Judge Paul Kelly from the Tenth Circuit Court of Appeals, who is sitting with us today by designation. So thank you very much, Judge Kelly, for joining us today. We have matters that we need to submit at this time. The first and the only submission is Serrano-Vázquez v. Garland, and that is the only submitted case. I'm sorry, there is a second one, Bustillo v. Garland. So those two matters are submitted. The first case for argument today is Produce Pay v. Izguerra Produce, and I believe that Mr. — did you say Brochin? Is that correct? Brochin is correct. Very well. So Mr. Brochin, if you'd like to proceed. I would, thank you, Your Honor, and we'd like to reserve three minutes for rebuttal time of my pen. Hey, watch the clock. We'll try to help you. Thank you. I'm Morgan Lewis. I'm here on behalf of Appellant Produce Pay, and we're here on Judge Marshall's order dismissing with prejudice Appellant Produce Pay's complaint for claims under the Perishable Agricultural Commodities Act of 1930, or PACA. Now, PACA was intended and enacted to promote fair trading practices in the produce industry by imposing a floating trust on perishable produce received by a dealer. It automatically gives rise to a trust in favor of a produce seller or supplier, such as the Appellant Produce Pay, upon the delivery of that produce and is for the exclusive benefit of those unpaid sellers or suppliers. Now here, the issue is whether the complaint stated a claim for relief under PACA resulting from the sale of avocados from Produce Pay to the defendant is Garrett. According to the California District Courts, there are five, five elements to stating a PACA cause of action and facts in the complaint below were alleged in the complaint for each of the five elements showing that Produce Pay is entitled to relief by its pleadings. Five elements. One, complaint alleges that the agricultural commodity at issue, avocados, is perishable. That's in paragraphs 21 and 22. The second element, that the purchaser of those perishable commodities is a merchant and a dealer or a broker. And here again, alleged that it is a Garrett, the defendant is just that, a dealer and a purchaser of perishable commodities. Indeed, it's alleged that is a Garrett is licensed and has a license under PACA. Third element, the sale of those perishable commodities must be through interstate commerce. Fourth element must be alleged as it is that the seller or supplier has not received full payment and that is alleged throughout the complaint. And then the fifth element is the seller of the supplier. Here again, Produce Pay Inc. must preserve its PACA trust rights by including the PACA statutory language on the referring to the trust or giving notice that the trust exists on the invoice itself, which is alleged in the complaint at paragraph 44. And that statutory language is found on Exhibit E to the complaint. So you take these very well pled factual allegations as true. The complaint states a cause of action for which counsel counsel it seems that your argument is skipping over an issue that in my mind is the issue that we have to decide. And that is whether Produce Pay actually is a seller or supplier. So could you address that It's alleged to be a seller and a supplier. A seller and a supplier is not defined under PACA as broker merchant and dealer arm. But in the context, it's been defined in a PACA context as the person who sells the perishable commodity war or someone who is secured a PACA license. And that's the Turkey not case versus East Coast. Are you contending that your client is a seller and a supplier or one or the other? It seemed in the complaint you focused mostly on supplier. Well, I think to have in state of claim, the plaintiff must be a seller or a supplier. The terms are somewhat synonymous. I'm not sure there's much of a difference. For example, a supplier is defined as someone who sells that perishable commodity or somebody who's got a PACA license. But what the statute allows is a seller. These are the statutes were or supplier to be entitled to bring these PACA claims. In this case, it's alleged that the produce pay sold those avocados on consignment to Izaguirre and therefore did supply those avocados through the council. I appreciate your perspective on this, but my reading of these PACA claims suggest that they're to be considered in effect holistically. There's a case issue, I'm sure well aware, called in race speech farms out of the Sixth Circuit involving your very client. And the facts seem virtually identical. And the court found that, in fact, produce pay was a lender and not a seller. What's the difference between that case other than the circuit? Obviously, what's the difference between that case and the facts of case and this one? There's a significant difference, your honor, in this regard. In that speech case, the issue first was decided whether that plaintiff was a supplier or seller. And what they did to decide that was they used UCC jurisprudence not to transfer a risk test. And they determined there the seller was not a seller or supplier because they never owned and they never purchased the produce to sell or supply. In this case, with respect, I understand that your client really never had possession of the avocados. They were always in Izaguirre's actual possession, but they did have ownership of it. They did purchase it, as alleged, from the grower Catalina. They have it available on their website. So people like Izaguirre go to purchase those avocados by going to the produce pay platform on their website and see what's Judge Kelly, did you have a question for counsel? Isn't it correct that in speech forms, it was the grower who was the producer and they relied on chemical bank to finance. And then they went to produce pay after having given a chemical bank and produce pay was in effect funding that particular grower. This is not this case we have here today does not deal with the grower. It deals with the distributor. Is that not correct? That is correct. That is correct. The issue that speech did address on the transfer was dealing with the assignment or the transfer of accounts receivables to produce pay and whether under that test, that was a loan and therefore exempt from the bankruptcy of the state because there's a protected pack of trust. The court finding no, it's not because that was really a loan when you transferred those receivables. It wasn't a sale. So the sale, the reason for the sale, and again, different not only from the facts of this case, but different from the allegations in this case, is that the allegation is that the avocados were sold by produce pay here to as a Garrett in the speech case, the plaintiff produce pay never had those produce to sell. And that's why the court under the UCC determined that that was not a seller or supplier in the PACA context. And I do want to know your honor. It's up to you, of course, but you're you're down to a minute, a little less than a minute and a half. You want to save time or you prefer to use that now? I do want to say about just wanted one thing in the speech case that determination was made after a full evidentiary hearing on a factual determination. Here, there was no such has been no sort of factual hearing to make the determination as to whether the plaintiff produce pay is a seller or supplier. When you come back for rebuttal, I would appreciate your answering the following question. Were we are you endo hypothetically to find that the district court was correct here, but send it back to permit an amendment of the complaint because that wasn't permitted? What would you add to the complaint that's not there now? So keep that in mind when you come back. Rebuttal. Let's now hear from counsel for each data, which is Mr. Is it Weiner? Is that the way you said? Correct. Please proceed. Thank you, your honors. The issue in this case is. And what counsel never addresses these, the exhibits or the exhibits that are attached to the complaint. Specifically, those exhibits can be found in the excerpt of the records at 69 page 69 and page 74. Let's start with page 74. Page 74 of the excerpt of the record is an invoice from Catalina Avocados. Let's just call that person the grower to Isgera and the terms of factoring arrangement. Then if you look at exhibit. Excerpt of record 69, which is also attached to the complaint. And that is a bill of lading. The bill of lading shows that it's being built to Isgera shipped to Isgera. It has an invoice number and it's from Catalina Avocados. So I have no doubt that the esteemed law firms on the other know how to plead a PACA complaint. I don't dispute what my esteemed counsels has said, which is that the complaint actually alleges and pleads a PACA claim cause of action. What this case is about are the exhibits attached to the complaint. And then if you. Are you suggesting that your client was not supposed to sell the avocados and remit the monies to produce pay and that your client signed a contract that specifically stated produce pay was a BFP of those avocados? If I understand the question correctly, what I'm saying is my client entered into a factoring arrangement with produce pay. It's no different than your client never paid anything. Your client only put up $15,000 and the balance of that money disappeared. Right, so that's not the issue in this case. Well, I think the issue in this, which the district court dealt with is not whether there's any monies owed. The issue is, is there a PACA claim? A PACA claim is a discrete kind of claim. It's not a question whether there's any monies. To whom is the fiduciary responsibility owed under PACA? It's owed to the grower, is it not? Correct. If the grower arguably were the plaintiff, this would be a different case. Well, but you signed a contract that set it up exactly that way where produce pay became the back to produce pay and there was never any discovery or anything else in this particular case. Well, so I agree with everything the court, the judge said, but what everybody's ignoring is the exhibits that are attached to the complaint. What the exhibits that are attached to the complaint say who the buyer and who the seller is. And PACA doesn't allow just anybody to get protection for a PACA payment. For example, if you were a Factor or a bank and the proceeds of the, if the grower assigned you the right to collect the money, that wouldn't be covered by PACA because PACA only covers certain classes of people. Well, I think what Judge Kelly is here, you have full of lading that shows that your client had to pass her off and say that the they were not damaged. And then your client received a bill for the amount which wasn't paid and if the money had been paid, it would have gone into the PACA trust for the benefit of the grower. I don't think there's any dispute about that. The question is not any plaintiff is a PACA protected class. That's what we're talking about. But not every distributor is setting up as a Factor. Okay, so true, true enough. Then we have to ask what is the economic realities of the contract that was also attached to the complaint. And I think what the district court said is if it walks like a duck and quacks like a duck, it's a duck. And just because you put a just because you use certain nomenclature and you put a sign around the duck that says this is a horse, it doesn't make it a horse. You look at the contract. What the contract has is really transactional creativity so that so that produce pay can be whatever they want to be on any given day. So sometimes they want to be a seller. And sometimes they just want to be a bank. And this transaction doesn't even have the indusher. If this is a strictly a sale, if it's strictly a sale, as counsel has argued, why is my client entitled to commission under the contract? Well, he's going to sell it. Supposedly, he's going to sell the avocados, keep his commission, remit the balance of the money to PACA to produce pay, and they in turn will send it to the grower. Ah, okay. I agree with that. But then it doesn't have the issue. How about paragraph K of the agreement? Distributed acknowledges and agrees the company is a bona fide purchaser acting in good faith with respect to all interactions with the distributor. I don't just I don't I don't argue with the court that this nomenclature in the contract, if you own the if you own the account, you're not a factor. And the distributor was the one that opened the account with the his with his buyers. And there's nothing to factor in this case. So take this take this hypothetical. Let's assume the grower had gone to chemical bank and said, Listen, I don't have the money. I don't have the money. I need some money. But here's what I'm going to do. I'll give me $20,000. And I'll assign you a security interest in these proceeds from his gara. That's exactly what happens here. That's the economic realities of this. There is no relationship between his gara and the grower is no contractual relationship. This is a this invoice. There's an invoice is a bill of lading. A bill of lading is just showing you you're under the deal as I read it. Your your client had to pass off on the on the how good the how good the goods were. And if they were good, then title went into produce pay. And your client was selling to his customers, uh, the avocados, and he never remitted anything other than the $15,000. So again, I don't factor in involved. Well, I agree at all. So I don't, I guess I respectfully disagree because I think this is a situation where it's no different when a bank advances you monies against an invoice. And that's what they did here. This is and if you look at the contract, that's exactly what happened here. May I ask you this question? I grew up in the agricultural business. We dealt with Paca all the time. And I'm inclined to agree with you. But I have this question. If we were to affirm the district court and send this case back with instructions to permit the plaintiffs to, I'm sorry, the produce produce pay to amend its complaint, is there any way in your judgment that they could plead, including the exhibits, plead a valid Paca claim? And if so, I don't think they can plead a valid Paca claim, because any amendment that they would make would be would be invariance with the exhibits that are already part of the record and that they've attached. And I'm not arguing with the court that there's nomenclature in this agreement that allows produce pay to be whatever they want to be. So sometimes they want to be a lender. And sometimes they don't. And so is it fair to say your point, which is my understanding as well, that basically this is a way to protect perishable agricultural commodity growers in bankruptcy, basically, that they have a special trust protection. So they get paid. It's very limited. It's very technical. In this situation, we really have a holistic analysis of documents to say two different things. And you're saying when you have that, you've got to look at the reality of it. And the reality is it's on your side. Your opposing counsel is saying, no, you've got to look at the documents. And if there's anything in there that would make this a Paca claim, you've got to follow that. That's what we're really dealing with here, isn't it? It's precisely that. And I would say, this Paca, in my estimation, is a very good law and a very solid law because we want to protect and we need to protect the people that grow our food and sell our food. We don't have that same concern when it comes to somebody who doesn't take possession. I don't think they ever took possession. I don't know that for certain, but just knowing how the contract works, they never took possession. We don't we care about those people, but there's different kinds of protections for those people. And you and you and you and you would have us. I mean, your client flaked. They didn't pay. We get that. But you're saying it doesn't matter for purposes of determining whether this is a legitimate Paca complaint where the money is treated as a trust fund. Is that correct? Right. Because because the elephant in the room, of course, is my client hasn't paid the money. But the the issue in the room, of course, is whether they towards the individuals are liable. This is sort of the next step where they want to take it. Now, if Guerra is a viable entity and it's collectible, you know, the bank should get paid and they took that risk and they get paid for taking that risk and they make their premiums. And, you know, I don't dispute that. But what we've let you go over time. Let me ask my colleagues the additional questions for you. I have one more question. I think. And maybe your middle ground here in this case. So as I said before, I think the question is, is your is produce pay a seller or supplier? As I look at that question, there's a pragmatic answer and there's a contractual answer. The pragmatic answer is now produce pay looks like a financer. But the contractual answer, as Judge Kelly has been pointing out, is there's I don't think you can just dismiss it as nomenclature in the contract. The contract is set up that is buying, taking title and then selling these avocados. So my question is, when I'm faced with that tension between pragmatism and the contract, what is the case law or what is the best legal authority that you have to say that I should ignore the contract and go with pragmatism? My best case, perhaps I can read this because I did prepare for it. But first of all, under the what the court must do and what this law always says that you disregard, disregard form of a substance. And then there's a case and I'll just I think I'm reading verbatim from it. It says appellant's efforts to usurp the protections of PACA, courts look to the economic substance of the contract rather than name. As the court in D.A.N.A. Corp. 351 Bankruptcy Report 96-102 says, if it walks like a duck and quacks like a duck, it's a duck. The bottom line here is if you look at this contract, you can find consignment language in here. You can find sales language in here. You can find lender borrower language in here. You can find whatever you're looking for. That's not what PACA is designed to do. PACA is supposed to be a narrow law, not an expansive law, because we're trying to protect a certain class of people. And the fact that they even argue that sometimes they're a consignment seller, sometimes they're not a consignment seller. They don't set the price. You can find whatever you're looking for in this contract. The problem is for me, the problem for me with your answer is these are sophisticated parties in a commercial context. We're not dealing with some consumer who has no idea what's going on. And so, I mean, you had the chance to read the contract. Maybe it does say a bunch of different things that are or are not consistent, but both parties signed it, and that's the governing agreement. So I don't know how we can just dismiss it so lightly. Well, then how does, and I would like counsel to explain this, which he never does, even in his brief or in his argument this morning. What does the invoice mean when it says, when Catalina sends an invoice and says sold to Izguera that he attaches to his complaint? What does that mean? If it doesn't mean a sale, and it doesn't mean that the seller of the goods is, if the seller of the goods is not Catalina and the buyer is not Izguera, then the And then the bill of lading and the proof of delivery, which has an invoice number. If that's invoice number four, my client still sends it. The bill of lading comes from Catalina produce. So obviously we know I would, I would suspect that there was nobody ever took possession of the goods. What does that mean? Is that just, is that just a meaningless act sending the invoice? Why is there an invoice? Why is there a bill of lading? That's what the contract says it means. And the facts might have to be developed. Okay. So I don't, I don't see where it says in the contract that the grower is supposed to send an invoice to my client. I don't see that. Do either of my colleagues have additional questions for counsel? No. Let's go over a little bit here. Thank you, counsel, very much for your argument. So let's go back to opposing counsel. You've got some rebuttal time. If you can answer the question that I had, and while you're at that, can you answer the question of, if you lose, you still have a claim to go after these folks in just ordinary lawsuit under state law, do you not? Yes. I mean, they were dismissed as well because the court didn't take supplemental jurisdiction, but there are common law claims for breach of contract. Yeah. But, but, but, but critically, uh, we, uh, produce pay does not want to lose the security protection of those assets. Uh, should, as a gear file for bankruptcy and claims alike. So it's critical that this complaint, what you're trying to do is this is, and I use this analogy, you're trying to perfect a lien on a property after the sales gone down basically. Right. And it's like in a bankruptcy context, we're saying, I, I intended to have a first lien. I didn't file anything, but I, I think I'm entitled to it because that's what I intended. Is that what we got here? No, I don't think that at all. What you have is, is the grower sold these avocados to produce pay. That's a, that's a protect a trust arose. Then, uh, produce pay became a PACA trustee as a seller and a supplier. It then in turn sells those avocados. Didn't advance money. Didn't loan money. Didn't sell or transfer receivables. It sold the avocados as a trust PACA trustee to a distributor. And, and, and, and let me ask you this. When, when, when did you, that is produced produce pay enter into an agreement with the grower to buy these, uh, by this produce? Uh, I, I don't know the exact answer. It didn't do it. It didn't do it. It never took possession. Right. It was dealing with the hypothetical asset, which it never took control of. It's not a bailment, not their property. It's not a consignment because they don't own it. This is a hybrid and that's what we're struggling with here. How do you deal with, um, an elephant that looks like a giraffe? But, but, but the, the transaction between the grower Catalina and produce pay is not at all relevant to the inquiry here. The only relevant sure. No, no, the relevant inquiry and the relevant transaction that is at issue is the sale of those avocados by produce pay. Now the district court says you didn't sell it to them. You lent them money. Well, that is a factual determination that was done without any evidence of, of the parties that, uh, which was inappropriate by, uh, is it, is it your view council? When the Congress passed this law, they didn't have in mind the growers, the people that produced in this case, the avocados, they had in mind the financers. That's what they were really concerned about. They didn't care about it with just a paper transaction. Weren't they trying to protect the growers? Of course, the growers have something to do with this. No, of course they had something to do with it. And yes, they were meant to protect the growers. In fact, what they were meant to do is to protect everyone in the sale and purchase of these commodities, perishable commodities, the growers, the people that buy it, the people that sell it, the people that finance it. In fact, the trust that's created is not just on the commodity itself. It's also on the proceeds from the commodity is a trust created. It's on the receivables from it. And it's very clear from the history. It's particularly everyone in that chain, including the grower, but including people like produce pay and is a Garrett. What I wasn't suggesting that it wasn't the growers important. I was just suggesting that for this case, the transaction between the grower and produce pay has no bearing on whether produce pay stated a claim for the breach of the packet trust by is a Gara upon receiving those goods. That was a breach of the trust by. OK, let me let me. I had asked you before about how you would amend the complaint if you had that opportunity to better state a packet claim. What would you do? What we would do is we would make abundantly clear what the facts of that transaction were from produce pay to is a Gara. We would plead more facts, I suppose, to demonstrate that a produce pay was a seller or supplier, both in the practical sense and in the legal sense. We would plead more facts to show that it was not alone. This was not that it was not a factoring agreement, that there were no advancements of monies. And so if you plead more facts, I suppose, and taking all those well accepted facts is true. We would ensure ourselves that we met the five elements of pleading a packet claim that the California courts have said are necessary in order to state a claim for belief. OK, thank you. Let me ask my colleagues whether either has additional questions for produce pay. May I have my sorry? Sorry, may I? No, no, no, no, no, no, no, no, no. Judge Kelly, do you have any additional questions? I do not. Thank you. All right. Well, thank you both. Counsel, we appreciate your argument. An interesting case. The case just argued is submitted.
judges: Kelly, SMITH, FORREST